[Cite as *State v. Tomlinson*, 2021-Ohio-1301.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 109614 |
| v. | : | |
| JAMES TOMLINSON, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 15, 2021

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-637535-A

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Ryan Bokoch, Assistant Prosecuting Attorney, *for appellee.*

Allison F. Hibbard; and Friedman & Gilbert, L.L.C., and Mary Catherine Corrigan, *for appellant.*

LARRY A. JONES, SR., P.J.:

{¶1} Defendant-appellant James Tomlinson ("Tomlinson") appeals his convictions that were rendered after a jury trial. For the reasons that follow, we affirm.

**Procedural History**

{¶ 2} Tomlinson was charged in a 28-count indictment with crimes relating to three shootings that occurred in Cleveland, Ohio over an approximate four-month period, as well as crimes arising from his arrest and an alleged attempt to intimidate victims.

{¶ 3} The first shooting occurred on March 29, 2018, and the charges relative to it were as follows: Counts 1 and 2, attempted murder of Carl Willis ("Willis") and Kenneth Dunnican ("Dunnican"), respectively; and Counts 3 and 4, felonious assault of Willis and Dunnican, respectively. Counts 1 through 4 contained one-, three-, and five-year firearm specifications. Tomlinson was also charged with Counts 5 and 6, felonious assault of Willis and Dunnican, respectively; and Counts 7 and 8, discharge of firearm on or near prohibited premises, with Willis and Kenneth Dunnican, respectively, as the victims. Counts 5 through 8 contained one- and three-year firearm specifications.

{¶ 4} The second shooting occurred on June 10, 2018, and the charges relative to that incident were as follows: Counts 9, 10, and 11, attempted murder of Willis, Dajah Carter ("Carter"), and Tamara Lee ("Lee"), respectively; and Counts 12, 13, and 14, felonious assault of Willis, Carter, and Lee, respectively. Counts 9 through 14 contained one- and three-year firearm specifications. Tomlinson was also charged in Counts 15 and 16 with intimidation of crime victim or witness. The charges were related to alleged threats he made against Carter and Lee that were recorded in jail calls.

{¶ 5} The last shooting occurred on July 30, 2018, and resulted in a single charge, Count 17, discharge of firearm on or near prohibited premises, with no named victim. The count contained one- and three-year firearm specifications.

{¶ 6} When Tomlinson was arrested, drugs, money, and a cell phone were found on his person, and resulted in the following charges: Count 18, trafficking; Count 19, drug possession; and Count 20, possessing criminal tools. Counts 18 through 20 contained forfeiture of money and forfeiture of cell phone specifications.

{¶ 7} Tomlinson was further charged in Count 21 with tampering with evidence. The charge related to the weapon that was linked to the crimes and found hidden in his mother's house that was searched pursuant to a warrant. The remaining counts, Counts 22 through 28, charged having weapons while under disability.

{¶ 8} Prior to trial, Tomlinson filed a motion for relief from prejudicial joinder and a motion to suppress. A hearing was held on both motions, at the conclusion of which they were denied. The matter then proceeded to a jury trial. Prior to the jury's deliberations, the state dismissed Counts 15 and 16, the two intimidation counts. The jury found Tomlinson not guilty of Counts 9 and 10, attempted murder of Willis and Carter (June 10, 2018 shooting), but found him guilty of the remaining counts and specifications. The trial court sentenced Tomlinson to a 31-year prison term.

## Factual Background

{¶ 9} The state presented numerous witnesses at trial, consisting of several law enforcement officials, a forensic scientist from the Cuyahoga County Regional Forensic Science Laboratory, and a forensic firearm and tool-marks scientist from the Cuyahoga County Medical Examiner's Office. None of the victims to the crimes testified. The state had subpoenaed victims Carter and Lee but they failed to appear. The testimony presented at trial demonstrated the following.

## March 29, 2018 Drive-by Shooting

{¶ 10} Sergeant Christopher Mobley ("Sergeant Mobley"), a Cleveland police detective in the gang-impact unit, testified that he had been monitoring the Instagram accounts of Tomlinson, who goes by the nickname "Whoadie," and another individual named Datuan Whitfield ("Whitfield"). He monitored the accounts because of feuds among different neighborhood groups. On the day of the March shooting, Sergeant Mobley was viewing a live video on Tomlinson's Instagram account driving in a vehicle and "posting" with firearms. The sergeant recorded the video on his phone; it was played for the jury at trial and admitted into evidence.

{¶ 11} During the course of the video, Gray Avenue was mentioned. Sergeant Mobley was aware that there had recently been a murder on Gray Avenue, and he was also aware that Tomlinson and Whitfield were illegally possessing the firearms. As such, Sergeant Mobley proceeded to the area and

advised a unit to respond as well. Just prior to arriving to the area, dispatch informed the sergeant that there had been a shooting in the area on East 115th Street that intersects with Gray Avenue.

{¶ 12} Members of the gang-impact unit responded to the scene and learned that a resident's home security camera had captured the shooting. The police recovered the footage that showed a vehicle driving northbound on East 115th Street past a parked car and someone in the moving vehicle shooting several times into the parked car.

{¶ 13} Two people were shot: Willis and Dunnican. The vehicle in which Willis and Dunnican had been in had multiple bullet defects. The police recovered 14 nine millimeter cartridge casings from the scene, ten of which it was determined had been discharged from a specific 9 mm Glock-26 weapon. Sergeant Mobley testified that five days after the shooting, Tomlinson stated in a video on his Instagram account, registered as "whoadiebackhome," "we don't miss bitch. Ask Ken bitch."

**June 10, 2018 Shooting**

{¶ 14} The June 10, 2018 shooting happened near a gas station on St. Clair Avenue in Cleveland. There were three victims — Carter, Lee, and Willis — who were shot at while they were in a vehicle. After the shooting, Carter and Lee called the police and remained on the scene. Cleveland Police officer Orlando Rivera ("Officer Rivera") arrived on the scene and spoke with Carter and Lee; the officer's interaction with them was recorded on his body camera. Carter and Lee told the

officer that the shooter was "Whoadie." The officer testified that the two victims were "very excited and emotional about what had just happened to them." At the time Carter and Lee identified the shooter, approximately 40 minutes had passed since the shooting had occurred. Footage from Officer Rivera's body camera was played for the jury.

{¶ 15} Detectives Donald Kopchak ("Detective Kopchak") and Kevin Warnock ("Detective Warnock") of the Cleveland Police Department were assigned to investigate the June shooting. Like Sergeant Mobley, Detective Kopchak had been involved in monitoring Tomlinson's Instagram account around the time of the June shooting. Detective Kopchak testified about one of Tomlinson's video posts around June 10, 2018.

{¶ 16} In the video, Tomlinson was wearing a blue sweatshirt with a gray Nike "swoosh" mark. He displayed a weapon that had the same characteristics as a Glock 26; the firearm was in Tomlinson's waistband and Detective Kopchak saw that Tomlinson was wearing teal boxer shorts that had a bright yellow waistband.

{¶ 17} The day after the shooting, the detectives obtained surveillance video from the gas station. Detective Kopchak reviewed the video and identified Tomlinson as the shooter. The surveillance video showed Tomlinson was wearing the same sweatshirt and boxer shorts that he had on in the Instagram video. Further, Tomlinson was shooting with a weapon that resembled a Glock 26.

{¶ 18} The video also revealed more details about the shooting. It showed the third victim, Willis, getting into the vehicle with Carter and Lee, and Tomlinson

trying to drag Willis out of the vehicle as the vehicle was being driven away. It was at that time that the shooting occurred. After the shooting, Tomlinson stayed on the scene and appeared to be celebrating.

**July 30, 2018 Shooting**

{¶ 19} The final shooting relative to this indictment occurred on the evening of July 30, 2018. At that time, the police responded to Colfax Avenue in Cleveland after calls from residents of shots fired. The police did not learn much that evening, but the following day, a resident called the police to report finding cartridge casings in his front yard. Detective William Fein responded to the resident's home and recovered approximately 17 casings from the resident's yard, driveway, and in the street.

**August 10, 2018 Arrest of Tomlinson; Subsequent Jail Calls**

{¶ 20} On August 10, 2018, Tomlinson was arrested, pursuant to an arrest warrant, at a home on Colfax Avenue, the street where the July 30 shooting had occurred. At the time of his arrest, Tomlinson had $760 in cash and drugs on his person.

{¶ 21} The police monitored his calls while he was in jail. In one call he placed to Monique Woodley ("Woodley"), his mother, he instructed her to find something and "get that shit missing." As a result of that call, the police obtained and executed a search warrant for Woodley's home. During the search, the police recovered body armor, a bullet-proof vest, two ammunition magazines, and a Glock-26 weapon.

{¶ 22} In November 2019, Tomlinson made several jail calls using other inmates' identification numbers. In some of the calls, Tomlinson discussed the possibility of bribing or intimidating Carter and Lee in order to persuade them not to testify and to recant their prior statements to the police. The state maintained that it became aware of those specific calls on January 13, 2020, which was several days after the trial had commenced. Over the defense's objection, the trial court allowed Detective Warnock to testify about the calls.

**Forensic Evidence**

{¶ 23} The Glock-26 weapon seized from Woodley's home had three DNA contributors; Tomlinson was the major contributor. After examination of the shell casings obtained from all three crime scenes, it was determined that at least four firearms were fired between the three scenes, but each scene had at least one shell casing that had been fired by the Glock 26 seized from Woodley's home.

## Assignments of Error

I.  The trial court erred in denying appellant's motion for relief from prejudicial joinder.

II.  The trial court erred in allowing into evidence the body camera statements made by the alleged victims who were not present at trial, in violation of the Confrontation Clause of the Sixth and Fourteenth Amendments to the United States Constitution.

III.  The trial court erred in permitting the state of Ohio to introduce jail calls not turned over to the defense counsel until five days into trial in violation of Criminal Rule 16(B).

## Law and Analysis

### Motion for Relief from Prejudicial Joinder

{¶ 24} In his first assignment of error, Tomlinson contends that the trial court abused its discretion by denying his motion for relief from prejudicial joinder.

{¶ 25} Under Crim.R. 8(A), two or more offenses may be charged together if the offenses "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Ohio law favors joinder of offenses that meet the Crim.R. 8(A) requirements in a single trial. *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 59. "Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses." *State v. Schaim*, 65 Ohio St.3d 51, 58, 600 N.E.2d 661 (1992).

{¶ 26} The state contends that the indicted offenses were of the same or similar character because they mostly related to Tomlinson unlawfully firing the same Glock-26 weapon at victims, into vehicles, and on or near prohibited premises. Further, Willis was a victim in two of the three shootings. And two of the three shootings were tied to an apparent social-media feud with another neighborhood group. Tomlinson has not challenged the joinder under Crim.R.

8(A), and we agree with the state that the offenses were of the same or similar character.

{¶ 27} However, even if joinder was proper under Crim.R. 8(A), Crim.R. 14 provides relief from prejudicial joinder. "If it appears that a defendant * * * is prejudiced by a joinder of offenses * * * the court shall order an election or separate trial of counts * * * or provide such other relief as justice requires." Crim.R. 14. "Severance may be warranted if the trial court finds a serious risk that a joint trial would prevent the jury from making a reliable judgment about guilt or innocence." *State v. Jackson*, 8th Dist. Cuyahoga No. 102394, 2015-Ohio-4274, ¶ 12, citing *United States v. Zafiro*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993).

{¶ 28} A defendant seeking severance must provide the trial court "'sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial.'" *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 166, quoting *State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981). The defendant "'bears the burden of proving prejudice and of proving that the trial court abused its discretion in denying severance.'" *Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 60, quoting *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 29.

{¶ 29} If a defendant makes a claim for prejudicial joinder, "[t]he state may rebut a defendant's claim * * * in two ways." *Dean* at ¶ 61. First, if the state shows

that the evidence of each joined offense is "simple and direct" the defendant's claim of prejudice fails. *Id.* Where the evidence of the joined offenses is "uncomplicated," such that the jury is "capable of segregating the proof" required to prove each offense, a defendant is not prejudiced by the joinder. *State v. Lunder*, 8th Dist. Cuyahoga No. 101223, 2014-Ohio-5341, ¶ 33.

{¶ 30} The second way the state can refute prejudice is if the state could otherwise introduce evidence of the joined offenses at separate trials as "other acts" pursuant to Evid.R. 404(B). *Dean* at *id.* However, if the state can establish that the evidence of each offense is simple and direct, it need not establish that the evidence would be otherwise admissible under Evid.R. 404(B). *State v. Clipps*, 8th Dist. Cuyahoga No. 107747, 2019-Ohio-3569, ¶ 45.

{¶ 31} According to Tomlinson, he was prejudiced by the joinder of offenses because his defense was restricted because he may have testified had the charges been severed. Tomlinson also contends that the evidence was too confusing for the jury.

{¶ 32} In regard to Tomlinson's first contention — that he may have testified had the charges been severed — we note that the burden rested on Tomlinson to make:

> a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information — regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other — to satisfy the court that the claim of prejudice is genuine.

*Baker v. United States*, 401 F.2d 958, 977 (D.C.Cir.1968).

{¶ 33} Tomlinson has offered no more than the simple statement that he may have testified if the charges had been severed. He did not elaborate on which charges he may have testified to. Thus, the record fails to support any claim "that he [had] both important testimony to give concerning one [indictment] and strong need to refrain from testifying on the other." *Id.* We now consider Tomlinson's second contention — that the evidence for all the charges was too confusing for the jury — to which the state rebuts that its evidence was clear and direct and presented in a fashion so as not to confuse the jury.

{¶ 34} Evidence is "simple and direct" if (1) the jury is capable of readily separating the proof required for each offense, (2) the evidence is unlikely to confuse jurors, (3) the evidence is straightforward, and (4) there is little danger that the jury would "improperly consider testimony on one offense as corroborative of the other." *State v. Wright*, 4th Dist. Jackson No. 16CA3, 2017-Ohio-8702, ¶ 52. Courts have held that evidence of multiple offenses is "simple and direct" where, for example, the offenses involved different victims, different incidents or factual scenarios, and different witnesses. *State v. Dantzler*, 10th Dist. Franklin Nos. 14AP-907 and 14AP-908, 2015-Ohio-3641, ¶ 23. Thus, as this court has stated, "Ohio appellate courts routinely find no prejudicial joinder where the evidence is presented in an orderly fashion as to the separate offenses or victims without significant overlap or conflation of proof." *State v. Echols*, 8th Dist.

Cuyahoga No. 102504, 2015-Ohio-5138, ¶ 16, citing *State v. Lewis*, 6th Dist. Lucas Nos. L-09-1224 and L-09-1225, 2010-Ohio-4202, ¶ 33.

{¶ 35} Upon review, we find that the evidence was simple and direct. For the most part, the state presented its witnesses in chronological order. The forensic evidence directly linked Tomlinson to the crime scenes and victims. Further, other evidence, such as social media posts, also clearly and directly linked Tomlinson to the crimes. There is no evidence that the jury was confused; to the contrary, the record demonstrates that the jury was able to separate the charges and consider them independently, as evidenced by it finding Tomlinson not guilty of Counts 9 and 10, attempted murder of Willis and Carter (June 10, 2018 shooting).

{¶ 36} In light of the above, the first assignment of error is without merit and hereby overruled.

**Body-Camera Evidence:  Right to Confrontation**

{¶ 37} In his second assignment of error, Tomlinson contends that he was denied his constitutional right to confrontation because the trial court allowed the admission of the police's body-camera statements of Lee and Carter, who did not testify. The state maintained, and the trial court agreed, that the evidence fell under the "excited utterance" hearsay exception.

{¶ 38} The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him [or her]."  In *Crawford v.*

*Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he [or she] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* at 53-54.

{¶ 39} Thus, according to *Crawford*, the initial analysis to be made in determining whether a defendant's right to confrontation has been violated by the admission of out-of-court statements that are not subject to cross-examination "is not whether [the statements] are reliable but whether they are testimonial in nature." *Toledo v. Sailes*, 180 Ohio App.3d 56, 2008-Ohio-6400, 904 N.E.2d 543, ¶ 13 (6th Dist.), citing *Crawford* at 61.

{¶ 40} *Crawford* did not precisely define "testimonial," but listed the following examples: (1) ex parte in-court testimony or its functional equivalent, such as affidavits and prior testimony that the defendant was unable to cross-examine, or pretrial statements that declarants would reasonably expect to be used in a prosecution; (2) extra-judicial statements contained in formal testimonial materials such as depositions, prior testimony, or confessions; and (3) statements made under circumstances that would lead an objective witness to believe the statement would be available for use at a later trial. *Id.*

{¶ 41} Later, in *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), the Supreme Court further considered the meaning of "testimonial" and held that:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later prosecution.

*Id.* at 822.

{¶ 42} To determine whether a statement is testimonial or nontestimonial, we inquire "whether a reasonable person in the declarant's position would anticipate his [or her] statement being used against the accused in investigating and prosecuting the case." *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir.2004); *see also State v. Stahl*, 111 Ohio St.3d 186, 192, 2006-Ohio-5482, 855 N.E.2d 834, paragraph two of the syllabus.

{¶ 43} Upon review, the body-camera statements were not testimonial. They were statements made to law enforcement in the course of responding to an emergency situation. The victims had just been shot at and called the police to seek protection and medical treatment.

{¶ 44} Although the statements were nontestimonial in nature and not subject to the confines of the Confrontation Clause, we must nevertheless proceed to determine their admissibility. *Crawford*, 541 U.S. at 68; *State v. Braun*, 8th Dist. Cuyahoga No. 91131, 2009-Ohio-4875, ¶ 117; *State v. McCree*, 8th Dist. Cuyahoga No. 87951, 2007-Ohio-268, ¶ 57. Pursuant to *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), an out-of-court statement may be admissible even if the declarant is unavailable for cross-examination if we find that

the statement falls "within a firmly rooted hearsay exception" or bears adequate indicia of reliability. *Id.* at 66.

{¶ 45} As mentioned, the statements were allowed under the excited-utterance-hearsay exception. An excited utterance is defined as a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2).

{¶ 46} For an alleged excited utterance to be admissible, four prerequisites must be satisfied: (1) a startling event producing a nervous excitement in the declarant, (2) the statement must have been made while still under the stress of excitement caused by the event, (3) the statement must relate to the startling event, and (4) the declarant must have personally observed the startling event. *State v. Brown*, 112 Ohio App.3d 583, 601, 679 N.E.2d 361 (12th Dist.1996).

{¶ 47} Carter and Lee observed the startling event — they were the victims of the shooting. Their statement — that the shooter was "Whoadie" — was related to the startling event. And the startling event — the shooting — produced a nervous excitement in Carter and Lee, for which they were still under at the time of their identifying Tomlinson as the shooter. Officer Rivera specifically testified that Carter and Lee were "very excited and emotional about what had just happened to them."

{¶ 48} Tomlinson contends that at the time of the body-camera recording, the event was no longer startling, as approximately 40 minutes had passed since the shooting. Although the passage of time between the event and the declaration

is relevant, it is not dispositive of the issue. *State v. Taylor*, 66 Ohio St.3d 295, 303, 612 N.E.2d 316 (1993). The Ohio Supreme Court has made clear that, to be an excited utterance, the statement need not be strictly contemporaneous with the startling event. *State v. Duncan*, 53 Ohio St.2d 215, 373 N.E.2d 1234 (1978), paragraph one of the syllabus. "'[E]ach case must be decided on its own circumstances, since it is patently futile to attempt to formulate an inelastic rule delimiting the time limits within which an oral utterance must be made in order that it be termed a spontaneous exclamation.'" *Taylor* at *id.*, quoting *Duncan* at 219-220. Rather, we consider whether the declarant is still under the stress of the event or whether the statement was the result of reflective thought. *Duncan* at *id.*; *see also In re C.C.*, 8th Dist. Cuyahoga Nos. 88320 and 88321, 2007-Ohio-2226 (finding an excited utterance even though 27 days passed between the event and the statement); *State v. Dukes* 8th Dist. Cuyahoga No. 52604, 1988 Ohio App. LEXIS 3466 (Aug. 25, 1988) (finding an excited utterance when the statement was made ten days following an incident). Again, here, only 40 minutes had passed between the shooting and Carter and Lee's statements. More importantly, Officer Rivera testified that they were "very excited and emotional" as they identified Tomlinson as the shooter.

{¶ 49} On this record, the trial court did not abuse its discretion by allowing the body-camera statements under the excited-utterances-hearsay exception. The second assignment of error is overruled.

**Jail Calls and Crim.R. 16(B)**

**{¶ 50}** In his third assignment of error, Tomlinson contends that the trial court abused its discretion by allowing the jail calls of Tomlinson alleging bribing or intimidating Carter and Lee. Tomlinson's complaint relates to the fact that the state did not turn the calls over until five days into trial, in violation of the discovery mandates of Crim.R. 16.

**{¶ 51}** A trial court's admission of evidence is reviewed for abuse of discretion. *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, ¶ 79. An abuse of discretion is more than an error of law or judgment; it is a finding that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Importantly, under this standard, an appellate court may not merely substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993).

**{¶ 52}** Reversal for admission of such evidence, however, also requires a showing of prejudice. *State v. Galloway*, 9th Dist. Summit No. 19752, 2001 Ohio App. LEXIS 299 (Jan. 31, 2001); Crim.R. 52(A) (harmless error). The charges to which this evidence pertained, Counts 15 and 16, witness intimidation, were dismissed by the state. As such, Tomlinson cannot show prejudice and cannot overcome a finding that the admission was at most harmless error. *See Akron v. Fowler*, 9th Dist. Summit No. 21327, 2003-Ohio-2844, ¶ 7.

**{¶ 53}** In light of the above, the third assignment of error is overruled.

**{¶ 54}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., PRESIDING JUDGE

MICHELLE J. SHEEHAN, J., and
EILEEN T. GALLAGHER, J., CONCUR