[Cite as *Cleveland v. Johns*, 2024-Ohio-3301.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF CLEVELAND,  :

    Plaintiff-Appellee,  :

                                  No. 113329

v.  :

KRISTINA JOHNS,  :

    Defendant-Appellant.  :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 29, 2024

---

Criminal Appeal from the Cleveland Municipal Court
Case No. 2022CRB010529

---

### *Appearances:*

Mark Davis Griffin, City of Cleveland Director of Law, Aqueelah Jordan, Chief Prosecutor, and Matthew Bezbatchenko, Assistant City Prosecutor, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, Erika B. Cunliffe and Michael S. Kan, Assistant Public Defenders, *for appellant*.

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant Kristina Johns appeals her endangering children conviction, which was entered after a jury trial. After a thorough review of the facts and pertinent law, we affirm.

{¶ 2} The incident giving rise to the conviction occurred at a childcare center where Johns was employed. Plaintiff-appellee the City of Cleveland presented four witnesses at trial. One of the witnesses, Monique Kaiser, was the sole adult witness to the incident.

{¶ 3} Kaiser was a substitute teacher who had been at the center on a long-term assignment for approximately one month before the subject incident; she served as an assistant to the "lead teacher." Prior to the incident, Kaiser had worked with Johns on five or six other occasions. On those prior occasions, Kaiser observed that, in general, Johns, seemed "[v]ery overwhelmed, stressed out." Kaiser explained that "[i]n a situation where you're supposed to be patient, [she] didn't see that" from Johns.

{¶ 4} Kaiser testified that on the day of the incident, she was assigned to the three-year-old room with Johns where they were supervising approximately seven children. The children were seated for "circle time" while Johns was reading to them. One child, the victim in this case, "was not listening, wouldn't come to circle time to sit." Rather, the child "was playing around, running and playing with toys."

{¶ 5} According to Kaiser, Johns, frustrated, went over to the victim, "grabbed" the child by the legs, and with the child's head directed downward, lifted

the child so that the victim's head was three to five feet from the ground, and then dropped the child's headfirst onto the uncarpeted hardwood floor. Kaiser testified that Johns then returned to the other children and acted as if nothing had happened.

{¶ 6} Meanwhile, the child victim was "screaming in agony, crying" so Kaiser comforted the child. After a few minutes, another employee from the center came to the room and Kaiser informed the employee about what had transpired.

{¶ 7} Kaiser was asked on direct examination if she was aware of any injuries Johns may have had that would have impacted her ability to pick up children. Kaiser responded: "Uh, I was told that she had a shoulder injury, which was not the truth." The defense objected, and the trial court struck the response. Kaiser did testify without objection, however, that in her prior occasions working with Johns she did not observe her having difficulty lifting children of various sizes.

{¶ 8} Although Kaiser's answer about Johns's alleged shoulder injury was stricken on direct examination, defense counsel questioned Kaiser about Johns's alleged injury on cross-examination: "And you had mentioned prior that you knew of my client's shoulder injury, right?" Kaiser responded, "Yes."

{¶ 9} Kaiser completed an incident report the day of the occurrence.

{¶ 10} The city also presented the testimony of Queen Baker, another employee at the center. At the time of the incident, Baker had been employed at the center for only approximately two-and-a-half weeks. Kaiser told Baker about the incident shortly after it occurred. Baker examined the victim, but she did not provide any aid to the child. Baker described Kaiser as "angry" about the incident.

{¶ 11} Unbeknownst to Baker, the victim's mother was also employed at the center; the mother was at work the day of the incident. The mother overheard Baker talking about the incident and inquired about it. When the mother heard the name of the child involved, she realized her child was the victim.

{¶ 12} In addition to not knowing the victim's mother, Baker testified that she also did not know either Kaiser or Johns. Kaiser did know that the victim's mother worked at the center; however, she never had any contact with the mother.

{¶ 13} The victim's mother testified. The mother testified that when she saw her child after the incident, the child was upset and crying. She took her child to the hospital for evaluation. The emergency room doctor advised the mother to watch the child for the signs and symptoms of a concussion.

{¶ 14} The mother testified that although she "knew of" Kaiser, she had never spoken to her and did not have any type of relationship with her.

{¶ 15} On cross-examination, defense counsel questioned the mother as to whether she knew about an alleged injury Johns had to her shoulder. The mother testified that she was unaware of the alleged injury. The mother also testified that it would not surprise her to know that Johns was 5′2″ tall.

{¶ 16} The doctor who treated the victim at the hospital emergency department on the day of the incident testified. According to the doctor, the child looked well, she did not find any marks on the child, and saw no sign of a head injury. The doctor testified that the child weighed 29 pounds.

{¶ 17} The doctor explained the concerns about the type of injury that could occur based on the reported incident. The main concern would be a head injury, which sometimes can manifest as a concussion or a skull fracture. The doctor also explained that in a child the victim's age, neck injuries are a concern because children that age have do not have the strongest neck muscles. The doctor further testified that it would be possible for a child to be dropped in the manner reported that the victim was and not have any bruising or markings. According to the doctor, the victim's mother "was concerned, worried . . . very focused on [the child's] medical care, making sure [the child] was healthy and safe." According to the mother, the victim was "pretty emotional" and "super clingy" in the aftermath of the incident.

{¶ 18} After the city rested its case, the defense made a Crim.R. 29 motion for judgment of acquittal, contending that Johns's alleged injured shoulder injury and diminutive stature made it impossible for her to lift a nearly 30-pound child in the manner alleged. The trial court denied the motion. The defense rested without presenting any witnesses.

{¶ 19} The defense argued to the jury in its closing argument that it was impossible for Johns, given her stature and alleged shoulder injury, to have committed the act. The jury returned a guilty verdict on the sole charge of endangering children. The trial court sentenced Johns to 180 days in jail with 175 days suspended and three years of active community control with conditions. Johns presents the following two assignments of error for our review:

I.   Kristina Johns was deprived of her liberty without due process of law where her conviction for endangering children is contrary to the weight of the evidence presented.

II.  Ms. Johns was denied effective assistance of counsel because trial counsel failed to develop[,] present and argue evidence that supported her claim that she was physically unable to perform the physical act alleged.

{¶ 20} In her first assignment of error, Johns challenges her conviction as being against the manifest weight of the evidence.

{¶ 21} "[W]eight of the evidence involves the inclination of the greater amount of credible evidence.'" *State v. Harris*, 2021-Ohio-856, ¶ 32 (8th Dist.), quoting *State v. Thompkins*, 1997-Ohio-52. Weight of the evidence relates to "'the evidence's effect of inducing belief.'" *Harris* at *id.*, quoting *State v. Wilson*, 2007-Ohio-2202, ¶ 25, citing *Thompkins*. The reviewing court must consider all the evidence in the record, the reasonable inferences to make from it, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Harris* at *id.*, citing *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172 (1st Dist.1983).

{¶ 22} For Johns to be convicted, the city had to prove beyond a reasonable doubt that she created a substantial risk to the health or safety of the child by violating a duty of care, protection, or support. *See* Cleveland Cod.Ord. 609.04(a).

{¶ 23} Johns contends that her conviction is "incredible." According to Johns, it is incredible that "a 59-year-old lady of small stature" was physically able to commit the act as described by Kaiser.

{¶ 24} The defense argued to the jury that Kaiser's rendition of the event was impossible. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the finder of fact." *State v. Metz*, 2019-Ohio-4054, ¶ 70 (8th Dist.), citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The trier of fact may "'believe or disbelieve any witness or accept part of what a witness says and reject the rest.'" *Metz* at *id.*, quoting *State v. Antill*, 176 Ohio St. 61, 67 (1964). "'[A]n appellate court may not substitute its own judgment for that of the finder of fact.'" *Harris* at ¶ 33, quoting *State v. Maldonado*, 2020-Ohio-5616, ¶ 40 (8th Dist.), citing *State v. Awan*, 22 Ohio St.3d 120 (1986).

{¶ 25} That the jury disregarded the defense's impossibility defense was not incredible. The sole adult witness to the event, Kaiser, was a neutral witness who had no incentive to fabricate the incident. Indeed, all the witnesses in this case were neutral as it related to one another and the victim. Kaiser testified that the victim was crying after the incident, and the victim's mother corroborated that. Further, Kaiser testified that she was upset by the incident and that was corroborated by Baker.

{¶ 26} Moreover, that the victim did not sustain a physical injury is inconsequential. The city merely had to prove that Johns's act created a substantial likelihood of resulting in serious physical harm. The emergency department doctor

testified about the substantial risk of physical harm that could have manifested based on Johns's act.

{¶ 27} The manifest weight of the record supports the endangering conviction. The first assignment of error is overruled.

{¶ 28} For her second assignment of error, Johns contends that her trial counsel was ineffective for failing to obtain her medical records, which would have shown her alleged shoulder injury.

{¶ 29} This court reviews alleged instances of ineffective assistance of trial counsel under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which was adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136 (1989). As stated in those cases, an ineffective assistance claim requires the defendant to show that his or her trial counsel rendered deficient performance that resulted in prejudice. *Strickland* at paragraph two of the syllabus; *Bradley* at paragraph two of the syllabus. The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697.

{¶ 30} To establish deficient performance, Johns must show that her trial counsel's performance fell below an objective standard of reasonable representation. *Id.* at 688. In evaluating counsel's performance, a reviewing court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "The adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial

court proceedings." *State v. Jackson*, 2005-Ohio-6143, ¶ 29 (2d Dist.), citing *Strickland*.

{¶ 31} To establish prejudice, Johns must show that there is "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 2008-Ohio-3426, ¶ 204. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bradley* at 142.

{¶ 32} As mentioned, Johns's claim of ineffective assistance of counsel is based on counsel's failure to obtain her medical records to document her alleged chronic shoulder injury. The record shows that counsel questioned the witnesses about the alleged injury and argued that theory — that, based on the injury, along with Johns's diminutive stature — it was an impossibility for her to have committed the act as alleged. On this record, counsel's performance was not deficient.

{¶ 33} Further, Johns has failed to demonstrate that, even had the medical records been in evidence, the outcome of the trial would have been different. Kaiser testified that she had not observed that Johns had difficulty lifting children on the prior occasions she had worked with her. The jury was aware of Johns' alleged injury, and still chose to find her guilty.

{¶ 34} Johns's ineffective assistance of counsel claim is without merit. The second assignment of error is overruled.

{¶ 35} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

MARY EILEEN KILBANE, P.J., and
LISA B. FORBES, J., CONCUR