[Cite as *State v. Parker*, 2026-Ohio-346.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 114916 |
| DEVONTE PARKER, | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 5, 2026

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-685345-C

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kevin R. Filiatraut, Assistant Prosecuting Attorney, *for appellee.*

Jaye M. Schlachet and Eric M. Levy, *for appellant.*

ANITA LASTER MAYS, J.:

{¶ 1} Defendant-appellant Devonte Parker ("Parker") appeals from his convictions entered by the Cuyahoga County Court of Common Pleas following a joint jury trial with codefendant Juan Davis ("Davis"). Parker was charged in a multicount indictment arising from a September 28, 2023 shooting that resulted in

the death of three-year-old L.D. and gunshot injuries to J.M.  For the reasons that follow, we affirm the judgment of the trial court.

## Procedural and Factual History

{¶ 2}  On September 28, 2023, A.F. resided in the downstairs unit of a duplex near West 66th Street and Barberton Avenue in Cleveland, Ohio, with her children, L.D., age three, and E.D.  On that date, A.F. was in the process of moving from the residence and was using her father's Acura MDX because her personal vehicle was inoperable.  After placing E.D. in a rear seat behind the driver's side and securing L.D. in a child safety seat behind the front passenger seat, A.F. began backing the vehicle out of the driveway.  As she did so, she heard multiple gunshots and immediately stopped the vehicle.  A.F. turned to the back seat to check on her children.  She observed that L.D. appeared purple and was struggling to breathe. Emergency assistance was sought, and L.D. was transported to MetroHealth Medical Center, where he was pronounced dead.  The medical examiner testified that L.D. died from a gunshot wound to the back that penetrated the aorta.

{¶ 3}  J.M., who had been standing outside the vehicle near the driveway, sustained a gunshot wound to his right foot.  Neither A.F. nor E.D. was struck by gunfire.  A.F. testified that she did not see the shooters and did not know Parker.

{¶ 4}  The incident arose after a neighbor, Katherine Treadway ("Treadway"), who lived in the duplex and was involved in a dispute with one of the adult victims, repeatedly called her boyfriend, codefendant Juan Davis, and moved her vehicle shortly before the shooting.

{¶ 5} Surveillance footage obtained during the investigation showed a black Mercedes-Benz sedan stopping near the area of the shooting. Two individuals exited the vehicle, ran toward the area where the gunfire occurred, and returned to the vehicle after shots were fired. The vehicle then fled the scene.

{¶ 6} ShotSpotter technology detected gunfire at approximately 2:16 p.m. Investigators also relied on GPS ankle monitor data from two ankle monitors that placed Jayden Sorensen on West 66th Street and Juan Davis on Barberton Avenue at the time the gunfire was detected.

{¶ 7} Sorensen later testified that Parker exited the Mercedes carrying a handgun and fired multiple shots toward A.F.'s vehicle before returning to the Mercedes. Sorensen admitted that he had previously provided false statements to law enforcement and testified pursuant to a plea agreement.

{¶ 8} Ballistics testing established that the bullet removed from L.D.'s body was discharged from a Canik 9 mm handgun recovered in March 2024. Ballistics testing established that the Canik 9 mm handgun recovered in March 2024 fired the bullet taken from L.D.'s body and the shell casings at the scene, and clothing recovered from Parker's residence tested positive for gunshot residue, linking that firearm and clothing to Parker.

{¶ 9} Parker did not provide a custodial statement to police. The indictment subsequently charged Parker with aggravated murder, murder, attempted murder, felonious assault, involuntary manslaughter, and having

weapons while under disability, along with firearm and repeat-violent-offender specifications. Parker entered pleas of not guilty.

{¶ 10} Parker waived his right to a jury trial on the repeat-violent-offender specifications and the charge of having weapons while under disability.

{¶ 11} The remaining charges proceeded to a joint jury trial with Davis. The jury was instructed to view Sorensen's accomplice testimony with grave suspicion.

{¶ 12} At the close of the State's case, Parker moved for acquittal pursuant to Crim.R. 29. The trial court denied the motion.

{¶ 13} The jury acquitted Parker of aggravated murder but found him guilty of murder, attempted murder, and related offenses. Parker was convicted of Count 3, murder of L.D., in violation of R.C. 2903.02(A), and Counts 4, 5, 6, 14, 15, and 16 merged into that offense. He was also convicted of Count 7, attempted murder of J.M., in violation of R.C. 2923.02 and 2903.02(A), with Counts 8 and 9 merging into Count 7. In addition, Parker was convicted of Count 10, attempted murder of A.F., in violation of R.C. 2923.02 and 2903.02(A), with Counts 11 and 13 merged into Count 10. Parker was further convicted of Count 12, attempted murder of E.D., in violation of R.C. 2923.02 and 2903.02(A), and Count 18, having a weapon while under disability, in violation of R.C. 2923.13(A)(2). The trial court imposed an aggregate sentence of life imprisonment with parole eligibility after forty-nine years. Parker raises three assignments of error for review.

## Assignments of Error

1. Appellant's conviction(s) were entered absent sufficient evidence and violated his rights as provided by the United States and Ohio Constitutions.

2. Appellant's convictions are against the manifest weight of the evidence.

3. The trial court committed plain error in admitting forensic evidence in violation of the confrontation clause of the United States Constitution and appellant's trial counsel was otherwise ineffective in failing to object to the admission of forensic evidence offered via testimony of a substitute expert(s).

## Law and Analysis

## Sufficiency of the Evidence

{¶ 14} In the first assignment of error, Parker argues that the State failed to present sufficient evidence that he was the shooter or that he acted with the requisite intent to support his convictions.

## Standard of Review

{¶ 15} A challenge to the sufficiency of the evidence presents a question of law and tests whether the evidence admitted at trial, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. McFarland*, 2020-Ohio-3343, ¶ 24, quoting *State v. Jenks,* 61 Ohio St.3d 259, (1991)*,* paragraph two of the syllabus, *State v. Smith*, 1997-Ohio-355, ¶ 102, fn. 4.

{¶ 16} The relevant inquiry is whether; after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offenses proven beyond a reasonable doubt. *Jenks* at paragraph two of the syllabus.

{¶ 17} In conducting this review, this court does not assess witness credibility or weigh the evidence. Rather, the court assumes the State's evidence is true and determines only whether the evidence, if true, would convince a reasonable juror of the defendant's guilt, beyond a reasonable doubt. *State v. Brown*, 2025-Ohio-2804, ¶ 17.

{¶ 18} Parker's sufficiency challenge is premised on misidentification and a lack of evidence regarding the element of purpose. Parker contends that the evidence presented at trial was insufficient to support a finding that he acted with the *purpose to kill*, an essential element of his murder conviction under R.C. 2903.02(A). These contentions, if accepted, would undermine all convictions dependent on proof that Parker possessed and discharged the firearm with the specific intent to kill. We, therefore, address sufficiency globally and conclude that, viewing the evidence in the light most favorable to the State, a rational trier of fact could find the essential elements proven beyond a reasonable doubt.

## A. Identity of the Shooter

{¶ 19} The record reflects that the State presented evidence that a black Mercedes-Benz was present at the scene of the shooting at the precise time ShotSpotter detected gunfire. Surveillance footage depicted two individuals exiting the vehicle and returning to it after shots were fired.

{¶ 20} GPS ankle-monitor data placed Sorensen at West 66th Street and Davis at Barberton Avenue at approximately 2:16 p.m., corroborating the timing and location of the incident.

{¶ 21} Sorensen testified that he exited the vehicle carrying an AR-style rifle and that Parker, whom Sorensen referred to as "Baby," exited carrying a Canik. Tr. 693. Sorensen stated they walked behind a vacant residence that he described as a "bando" and that Parker fired multiple shots toward A.F.'s vehicle. Tr. 712-713. Sorenson also identified State's exhibit No. 304, a hooded Nike jacket, and State's exhibit No. 308, slip-proof crocs, as items that Parker wore the day of the shooting. Tr. 309-310. These items were confiscated through a search warrant of Parker's home and were also clothing worn by the shooter on the surveillance video. Although Sorensen admitted that he had provided false statements during earlier interviews, his trial testimony was subject to cross-examination, and the jury was instructed to view accomplice testimony with caution.

### B. Purpose to Kill

{¶ 22} A person acts purposely when it is the person's specific intention to cause a certain result. R.C. 2901.22(A). Purpose may be inferred from the surrounding circumstances, including the weapon used, its capacity to cause death, and the manner of its use. *State v. Stallings*, 89 Ohio St.3d 280, 290 (2000).

### 1. Count 3 Murder of L.D.

{¶ 23} Count 3 required the State to prove that Parker purposely caused the death of L.D. At the time of the shooting, A.F. was backing the vehicle out of the driveway with two children inside (L.D. and E.D.), while J.M. was standing near the driveway. Sorensen testified that Parker exited the black Mercedes armed with a handgun and fired multiple rounds toward A.F.'s occupied Acura MDX.

Surveillance footage showed the black Mercedes stopping near the duplex, with two individuals exiting before fleeing immediately after the shots were fired. ShotSpotter recorded gunfire at approximately the same time, and the GPS ankle-monitor data described above corroborated the timing and location of the incident.

{¶ 24} The State also presented evidence of coordination and preparation. The record references communications involving Davis, Parker, and Treadway, and the recovery of ammunition and clothing matching the shooter's described attire with gunshot-residue evidence. The evidence firmly establishes Parker's connection to the crime scene and the shooting. Sorensen identified photos of clothing recovered from Parker's residence, including a hooded Nike jacket and slip-proof Crocs, as the same items Parker wore during the shooting. These items were visible in the surveillance footage that depicted the shooter exiting the black Mercedes-Benz and firing multiple shots toward the victims' vehicle. The State further presented ballistic evidence that the bullet recovered from L.D.'s body and shell casings recovered at the scene were fired from a Canik 9 mm handgun later recovered by police.

{¶ 25} The clothing recovered from Parker's residence also tested positive for gunshot residue, further corroborating his involvement. Although Sorensen admitted to providing false statements during earlier interviews and testified pursuant to a plea agreement, his testimony was subject to cross-examination, and the jury was instructed to view accomplice testimony with caution. Importantly, Sorensen's testimony was corroborated by independent evidence, including

surveillance footage, forensic findings, and ballistic evidence linking the recovered firearm to the fatal shot.  Taken together, this evidence provided a concrete basis for the jury to conclude that Parker was the shooter and to reject the defense's competing narrative.  L.D. sustained the fatal gunshot wound, and J.M., who was outside the vehicle, sustained a gunshot wound to his right foot.  On these facts, a rational juror could infer that firing multiple rounds at an occupied vehicle in close proximity to persons in the driveway demonstrated purposeful conduct consistent with the intent to cause death.

{¶ 26} Viewing the evidence in the light most favorable to the State, a rational trier of fact could find beyond a reasonable doubt that Parker acted purposely and caused the death of L.D.  Accordingly, the evidence was sufficient to support Parker's conviction for murder as to L.D.

{¶ 27} From the manner of the shooting, multiple shots fired toward an occupied vehicle, and the resulting fatal injury, a rational juror could infer that Parker acted with the specific intent to cause death. *Stallings*, 89 Ohio St.3d at 290.

### 2.  Attempted Murder of J.M.

{¶ 28} Count 7 alleged that Parker purposely attempted to cause the death of J.M. The evidence established that J.M. was standing in the driveway area when the shots were fired and that he was struck by gunfire, sustaining a gunshot wound to his foot.  When the evidence is viewed most favorably to the State, a rational juror could conclude that firing multiple rounds into the area of the driveway and toward

the occupied vehicle constituted conduct that, if successful, would have caused death, and therefore, supported an inference of purpose as to J.M.

### 3. Attempted Murder of A.F.

{¶ 29} Count 10 alleged that Parker purposely attempted to cause the death of A.F. The evidence showed A.F. was operating the Acura MDX as it backed out of the driveway when Parker fired multiple rounds toward the vehicle. A rational juror could find that firing multiple shots toward the occupied vehicle supported the inference that Parker intended to cause death and took a substantial step toward that result.

### 4. Attempted Murder of E.D.

{¶ 30} Count 12 alleged that Parker purposely attempted to cause the death of E.D. The evidence established that E.D. was inside the vehicle during the shooting. Viewing the evidence in the light most favorable to the State, a rational juror could find that firing multiple rounds toward an occupied vehicle containing E.D. was conduct strongly corroborative of a purpose to cause death and constituted a substantial step toward purposely causing E.D.'s death, even though E.D. did not suffer a fatal injury.

{¶ 31} The close proximity of the shooting, the occupied nature of the vehicle, and the multiple shots fired in rapid succession all support the reasonable inference that Parker acted with the specific intent to cause death, regardless of which particular victim might have been struck. Accordingly, Parker's sufficiency challenge to his convictions of murder and attempted murder is overruled.

## Manifest Weight of the Evidence

**{¶ 32}** Parker contends, in his second assignment of error, that the jury lost its way by crediting Sorensen's testimony despite his admitted dishonesty and plea agreement. We find Parker's argument unpersuasive.

## Standard of Review

**{¶ 33}** Unlike a sufficiency challenge, a manifest-weight challenge requires the appellate court to review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether the jury clearly lost its way and created a manifest miscarriage of justice. *State v. Armstrong*, 2024-Ohio-1277, ¶ 40 (8th Dist.), quoting *State v. Thompkins,* 78 Ohio St.3d 380 (1997).

**{¶ 34}** Reversal on manifest-weight grounds is reserved for the exceptional case in that the evidence weighs heavily against the conviction. *Id.* at ¶ 40, quoting*, State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist. 1983).

## Analysis

**{¶ 35}** In addressing a manifest-weight challenge, this court remains mindful of "the presumption in favor of the finder of the fact." *State v. Gray*, 2021-Ohio-844, ¶ 18 (8th Dist.), quoting *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 21. A jury has an advantage concerning witness credibility and the weight to be given to the evidence because it sees and hears the witnesses as testimony unfolds. *State v. Wilson*, 2007-Ohio-2202, ¶ 24. As the trier of fact, a jury may "believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Johns*, 2024-Ohio-3301, ¶ 24 (8th Dist.), quoting *State v. Metz*, 2019-Ohio-4054, ¶ 70 (8th

Dist.). In evaluating credibility, the jury may consider the witness's demeanor, the manner of testimony, any relationship with the prosecution or the defense, and any personal interest in the outcome of the case. *State v. Williams*, 1978 Ohio App. LEXIS 10256, at \*10 (8th Dist. Apr. 20, 1978).

{¶ 36} Sorensen admitted that he lied during earlier interviews, and the defense cross-examined him concerning his prior statements and plea agreement. The jury, however, observed Sorensen's demeanor and manner of testifying and was in the best position to evaluate credibility as the testimony unfolded. *State v. Wilson*, 2007-Ohio-2202, ¶ 24; *State v. Williams*, 1978 Ohio App. LEXIS 10256, \*10 (8th Dist. Apr. 20, 1978). Further, the jury was instructed under R.C. 2923.03(D) to view accomplice testimony with grave suspicion and to weigh it with caution and great care. Further, the jury's credibility determination did not rest on accomplice testimony alone. Sorensen's testimony was corroborated by independent evidence presented at trial, including surveillance footage, ShotSpotter data, GPS-monitoring records, and ballistic evidence linking the recovered firearm to the fatal shot. Viewed together, that evidence provided the jury with a concrete evidentiary basis to believe the identification testimony and to reject the competing narrative advanced by the defense.

{¶ 37} After affording due deference to the jury's determinations in resolving inconsistent witness testimony, we cannot say that the jury "clearly lost its way" or that the guilty verdicts constitute a manifest miscarriage of justice.

{¶ 38} Accordingly, Parker's second assignment of error is overruled.

## Confrontation Clause

{¶ 39} In his third assignment of error, Parker argues the trial court plainly erred by admitting forensic evidence in violation of the Confrontation Clause, which prohibits testimonial statements of a witness who did not appear at trial, unless the witness was unavailable to testify and the defendant had had a prior opportunity for cross-examination. *State v. Tomlinson*, 2021-Ohio-1301, ¶ 38 (8th Dist.). Parker's Confrontation Clause challenge targets three categories of forensic proof: (1) DNA testimony from analyst Esterline regarding swabs she did not collect or observe being collected; (2) gunshot-residue ("GSR") testimony from trace-evidence supervisor Curtiss Jones regarding clothing recovered from Parker's residence; and (3) firearms and toolmark testimony from supervisor Thomas Morgan linking the Canik pistol to the cartridge cases recovered at the scene and the autopsy bullet, including Morgan's testimony concerning the National Integrated Ballistic Information Network ("NIBIN") and chain-of-custody issues.

## Standard of Review

{¶ 40} We review a trial court's admission of evidence for abuse of discretion. *Tomlinson* at ¶ 51. "An abuse of discretion 'implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.'" *Schleich v. Penn Cent. Corp.*, 2024-Ohio-5005, ¶ 9 (8th Dist.), quoting *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, 2022-Ohio-4677, ¶ 3. An abuse of discretion occurs when "the court's

attitude is unreasonable, arbitrary or unconscionable." *E.g., State v. Weiss,* 2025-Ohio-277, ¶ 7 (8th Dist.).

{¶ 41} This court has held that "a trial court does not have discretion to misapply the law." *Morgan v. Greater Cleveland RTA*, 2025-Ohio-1655, ¶ 64, quoting *Johnson* at ¶ 38. "Thus, an abuse of discretion also occurs when a court ""applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.""" *Id.,* quoting *Thomas v. Cleveland*, 2008-Ohio-1720, ¶ 15 (8th Dist.), quoting *Berger v. Mayfield*, 265 F.3d 399 (6th Cir. 2001). Absent an abuse of discretion, a trial court has broad discretion over the admission of evidence. *State v. Barnes*, 94 Ohio St.3d 21, 23 (2002).

{¶ 42} Because Parker did not object to the admission of forensic evidence at trial, our review is limited to plain error. *Id.* at ¶ 27. Under Crim.R. 52(B), plain error has three requirements: there was an obvious defect in the proceedings, the defect affected substantial rights, and the outcome of the trial would clearly have been different absent the error. *Id.* Plain error is reserved for exceptional circumstances and only to prevent a manifest miscarriage of justice. *Id.*, citing *e.g.*, *State v. Hill*, 2001-Ohio-141, ¶ 205.

{¶ 43} The Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him; however, when a defendant does not object at trial, we review the alleged Confrontation Clause violation for plain error. *See* Crim.R. 52(B). Under that standard, Parker must show an obvious defect that

affected substantial rights and that the outcome clearly would have been different but for the error. *Id.*

{¶ 44} Parker relies on *Smith v. Arizona*, 602 U.S. 779 (2024), and *Bullcoming v. New Mexico*, 564 U.S. 647 (2011), for the proposition that the State may not introduce testimonial forensic conclusions through a surrogate witness when the jury can accept the conclusion only if the absent analyst's assertions are true. Parker also cites *State v. Hale*, 2024-Ohio-5579 (1st Dist.), as applied authority.

**A. GSR Evidence (Curtiss Jones)**

{¶ 45} Parker challenges Jones's GSR testimony. Jones testified he received a package of clothing from Parker's residence, observed that the items were not individually packaged, and conducted GSR testing on the black Nike jacket and orange Adidas sweatshirt, finding characteristic particles. Parker argues the packaging created a contamination risk and that the integrity of collection and packaging depended on nontestifying personnel whom he could not cross-examine.

{¶ 46} Parker fails to establish a Confrontation Clause violation. Jones did not testify as a surrogate for an absent analyst's conclusions; he performed the testing and testified to his own work and findings. Parker's argument concerns the reliability and weight of the GSR inference given the packaging and chain-of-custody issues. But the Confrontation Clause analysis Parker advances under *Smith* and *Bullcoming* is triggered by the admission of testimonial statements of a non-

testifying witness for their truth, not by general disputes over evidence-handling practices.

### B. Ballistics Testimony (Thomas Morgan; NIBIN/chain-of-custody points)

{¶ 47} Parker also challenges Morgan's firearms/toolmark testimony. Parker emphasizes that Morgan "definitively identified the Canik pistol as the murder weapon," but admitted he received key items from a detective and "did not know how the firearm was obtained or who was in possession of it." Parker further points to Morgan's testimony that NIBIN correlation reviews are completed by a federal contractor and argues that the State relied on nontestifying entities' work and documentation.

{¶ 48} As argued, these points do not establish a Confrontation Clause violation. Morgan's testimony, that the Canik pistol matched the cartridge cases and bullet based on comparative examination and test firing, was presented as his own expert opinion, and Morgan was subject to cross-examination. Morgan's lack of personal knowledge about how the firearm was obtained, and his description of the role of the NIBIN, speak to the evidentiary foundation and the investigative process. Parker has not identified a testimonial statement by an absent firearms analyst or NIBIN contractor that Morgan repeated for its truth in the manner addressed by *Smith* and *Bullcoming*.

{¶ 49} The record also demonstrates that the firearm examiner who testified, conducted, or supervised the relevant testing rendered an independent expert opinion based on that testing.

{¶ 50} The examiner testified that a Canik 9 mm handgun recovered in March 2024, fired both the bullet recovered from L.D.'s body and the shell casings found at the scene. The examiner was present at trial and subject to full cross-examination regarding the testing methodology and conclusions.

{¶ 51} In arguing that the admission of the ballistics testimony violated the Confrontation Clause, Parker relies on *Smith v. Arizona*, 602 U.S. 779 (2024). *Smith*, however, is materially distinguishable from the circumstances presented in this case. In *Smith*, the State introduced a drug analyst's out-of-court statements through a substitute expert who neither performed nor supervised the underlying testing and who effectively relayed the absent analyst's testimonial conclusions so that the jury would accept them as true.

{¶ 52} The Supreme Court held that when an expert conveys an absent analyst's statements and those statements support the expert's opinion only if they are true, those statements are introduced for their truth, and the defendant has the right to confront the analyst who made them. *Id.* Here, by contrast, the testifying firearms examiner personally examined the bullet recovered from L.D.'s body, classified it, and searched the Association of Firearm and Toolmark Examiners general rifling characteristics database to identify potential makers of firearms, including Canik. He then personally examined additional bullets and fragments,

compared them to the autopsy bullet using a comparison microscope, and concluded that they were all fired from the same unknown firearm. The examiner further conducted test-firing of the Canik 9 mm handgun later recovered by law enforcement, compared the test bullets and cartridge casings to the crime-scene bullets and casings, and opined that they were all fired from that specific firearm.

{¶ 53} Moreover, the examiner authored the reports admitted at trial and testified about his own testing, observations, and conclusions. Although the ballistics examiner referred to NIBIN and other investigative steps that led police to the Canik handgun, his trial testimony did not consist of reciting the conclusions of a nontestifying firearms analyst or adopting another examiner's opinions as his own. On the record, the firearms examiner testified to his own observations, testing, and conclusions and was subject to cross-examination.

{¶ 54} Accordingly, Parker has not demonstrated a Confrontation Clause violation. Because Parker has not established error, he necessarily has not demonstrated an obvious defect affecting substantial rights, and this is not the exceptional case warranting relief under Crim.R. 52(B).

{¶ 55} For the same reasons, Parker has not shown a reasonable probability that, but for the admission of ballistics evidence, the result of the trial would have been different.

{¶ 56} Although Parker emphasizes that the State did not call every individual involved in the ballistics process, the testimony of the firearms examiner who conducted or supervised the testing, together with the corroborating

surveillance, technological, and eyewitness evidence, was sufficient to establish the elements of the offenses beyond a reasonable doubt.

{¶ 57} The State presented direct and circumstantial evidence sufficient for the jury to find that Parker was the shooter, and the trial court did not err when it admitted ballistics testimony.

{¶ 58} To the extent Parker frames this claim as ineffective assistance of counsel for failing to object to the forensic testimony, it likewise fails because, given our conclusion that admission of the challenged evidence did not violate the Confrontation Clause, Parker cannot demonstrate either deficient performance or resulting prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984).

{¶ 59} Parker's third assignment of error is overruled.

{¶ 60} The judgment of the trial court is affirmed.

The court finds there were reasonable grounds for this appeal.

It is ordered that appellee recover from appellant costs herein taxed.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

EILEEN T. GALLAGHER, P.J., and
MARY J. BOYLE, J., CONCUR