[Cite as *Morgan v. Greater Cleveland Regional Transit Auth.*, 2025-Ohio-1655.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

LAVERNE MORGAN,                    :

    Plaintiff-Appellee,         :

                                            Nos. 113875 and 113973

    v.                           :

GREATER CLEVELAND REGIONAL         :
TRANSIT AUTHORITY, ET AL.,         :

    Defendants-Appellants.       :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED IN PART, REVERSED IN PART,
                  AND REMANDED
**RELEASED AND JOURNALIZED:**  May 8, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-968827

---

## *Appearances:*

James E. Boulas Co., L.P.A., Panagiota D. Boulas, and
James E. Boulas, *for appellee.*

Janet E. Burney, General Counsel — Deputy General
Manager for Legal Affairs, Keith A. Ganther, Sr. Counsel –
Litigation, and Brian R. Gutkowski, Associate Counsel II;
Roetzel & Andress, LPA, Stephen W. Funk, and Emily K.
Anglewicz, *for appellant* Greater Cleveland Regional
Transit Authority.

Roetzel & Andress, LPA, Stephen W. Funk, and Emily K.
Anglewicz, *for appellant* Brian R. Gutkowski

MICHELLE J. SHEEHAN, J.:

{¶ 1} Oscar Wilde said, "The study of law is sublime, and its practice vulgar." That has never been more evident than in this case. Litigation and the practice of law are difficult enough without constant disagreement and lack of civility among counsel. This case is an example of repeated discovery disputes, lack of professional courtesy, and disrespectful conduct toward counsel and the judiciary that ultimately led to a hearing on contempt and sanctions.

{¶ 2} Defendant-appellant, Greater Cleveland Regional Transit Authority ("RTA"), separately appealed two interlocutory judgments from the trial court: (1) the trial court's denial of RTA's summary judgment motion based on political-subdivision immunity, and (2) the trial court's judgment finding RTA and its counsel in contempt of court and ordering them to pay sanctions.[1] This court consolidated the appeals for purposes of briefing, hearing, and disposition. RTA raises three assignments of error for our review:

> 1. The trial court erred as a matter of law by denying appellant [RTA's] motion for summary judgment because appellant is immune from liability pursuant to R.C. Chapter 2744.
>
> 2. The trial court committed reversible error by finding appellants [RTA] and its counsel . . . in contempt.

---

[1] Both interlocutory judgments are final appealable orders. *See Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 15 (1988) ("R.C. 2705.09 gives a right to appeal to a person found to be in contempt of court."); *Hubbell v. Xenia*, 2007-Ohio-4839, syllabus (An order that denies the benefit of alleged political-subdivision immunity is a final appealable order.).

3. The trial court committed reversible error by imposing $13,870.00 in attorney fees as a contempt sanction against appellants without an evidentiary hearing.

{¶ 3} After a thorough review of the facts and relevant law, we affirm the trial court's judgment in part, reverse it in part, and remand the case to the trial court for further proceedings consistent with this opinion. We affirm the trial court's judgment denying RTA's motion for summary judgment with respect to R.C. 2744.02(B)(1) and (2). We agree with the trial court that questions of fact remain regarding whether RTA's employee negligently operated the bus and whether that negligence proximately caused plaintiff-appellee Laverne Morgan's injuries. We therefore overrule RTA's first assignment of error.

{¶ 4} However, we are constrained to reverse the trial court's judgment finding RTA and its counsel in contempt of court for failing to complete discovery by January 8, 2024. To be clear, we do not condone the conduct of counsel in this case. Gamesmanship and unprofessionalism pervade the record regarding how counsel treated each other and the trial court, especially RTA's counsel's refusal to allow RTA employee depositions to take place at Morgan's counsel's office. But as discussed below, the trial court's contempt power for a nonparty witness's failure to appear for deposition extends only to the subpoenaed RTA employees and not to RTA. The trial court cannot force a party to produce nonparty witnesses, even if the nonparty witnesses are the corporate defendant's own employees. We therefore sustain RTA's second assignment of error. However, we find that the RTA employees were properly subpoenaed by Morgan but failed to appear for deposition,

and we remand this matter for the trial court to proceed within its discretion regarding the discovery matters in this case.

## I. Procedural History and Factual Background

{¶ 5} In September 2020, Morgan and her husband were passengers on an RTA bus. Stephen Walker, an employee of RTA, was the bus driver at the time. As Morgan exited the bus, she grabbed a bar on the bus door with her left hand. Morgan was still holding onto the grab bar on the bus door when Walker shut the bus doors on her left wrist. Bus drivers control the doors by using a switch that opens and closes them. The bus driver immediately opened the doors, and Morgan walked away. Approximately four minutes later, Morgan's husband walked back to the bus to obtain information about the bus and its driver.

{¶ 6} Morgan went to the hospital the following day, complaining of wrist pain. Although her wrist was not broken, she was given a splint or wrap to immobilize it. Five days after the incident, she saw an orthopedic hand specialist who gave her hand exercises to do at home and referred her to an occupational therapist. Morgan went to the occupational therapist on October 26, 2020, and was given a home-exercise program. Morgan claims that despite the follow-up care, she continues to have pain and other issues with her wrist from the incident. She further contends that her wrist injuries from the bus incident are permanent.

{¶ 7} Morgan filed a complaint against RTA and Walker in September 2022, alleging negligence against Walker and respondeat superior against RTA.

{¶ 8} RTA moved to dismiss, arguing that Morgan's complaint failed to state a claim against RTA and Walker. The trial court denied the motion with respect to RTA but granted it with respect to Walker, finding that Morgan did not allege any facts that Walker acted maliciously, in bad faith, or in a wanton or reckless manner. RTA subsequently answered Morgan's complaint, denying her allegations and setting forth several affirmative defenses, including that it was immune from liability pursuant to R.C. Ch. 2744.

{¶ 9} Discovery commenced, and disputes arose almost immediately. We will discuss only the disputes that are relevant to this appeal. In February 2023, RTA identified three of its employees as "individuals with discoverable information" in the case, including Walker; Donna Bernard, a claims adjuster at RTA; and Charles Brown, RTA's security manager. RTA gave the same address for each of the three witnesses: 1240 West 6th Street, 6th Floor, Cleveland, Ohio, which is the address of RTA's headquarters in downtown Cleveland.

{¶ 10} Morgan subpoenaed these witnesses in March 2023 and commanded them to appear for depositions on April 25, 2023, at Morgan's counsel's office in Broadview Heights. Morgan also commanded Walker to bring "[a] complete copy of his RTA driver qualification file" and Bernard to bring "[a] complete copy of [Walker's] driver qualification file and the Vehicle Accident Investigation file or its equivalent relating to RTA bus #26 on September 20, 2020." Morgan served the subpoenas to each witness via certified mail to the addresses provided by RTA for the witnesses in its initial disclosures. A legal secretary signed for the subpoenas on

March 16, 2023. Morgan filed a return of service for each of the subpoenas with the clerk of courts.

{¶ 11} On April 19, 2023, RTA's counsel sent an email to Morgan's counsel stating that two of the witnesses objected to the subpoenas because they sought documents that were (1) not in the witnesses' possession, (2) protected by work-product privilege, and (3) "unduly burdensome" and "not proportionate to the needs of this case." A notice of appearance of counsel was never filed on behalf of the witnesses nor was a motion for protective order or motion to quash the subpoenas. Neither RTA's counsel nor the witnesses appeared for the depositions.

{¶ 12} RTA moved for summary judgment in late October 2023.

{¶ 13} Morgan's counsel subpoenaed Walker again on October 10, 2023, and commanded him to appear for deposition in Broadview Heights on October 16, 2023. Morgan's counsel ordered Walker to bring with him to the deposition a "complete copy" of his "RTA driver qualification file."

{¶ 14} On October 12, 2023, RTA's counsel moved to quash the subpoena to nonparty witness, Stephen Walker. The sole reason in support of the motion to quash was RTA's claim that Morgan had "frustrate[d] the discovery efforts." RTA's counsel stated that it would produce Walker "either at the Main Office, downtown or via Zoom" for the October 16, 2023 deposition, "if and only if [Morgan] provides [RTA] with three (3) things requested in discovery": (1) Morgan's husband's current address, (2) Morgan's in-home health aide's current address and phone number, and (3) the video recording of RTA's medical expert's independent medical exam of

Morgan. RTA further argued that Morgan failed to file a return of service for Walker, and that the subpoena was unduly burdensome. Neither Walker nor RTA's counsel appeared for the October 16th deposition. The trial court later denied RTA's motion to quash.

{¶ 15} Morgan's counsel filed a motion to compel in early November 2023 and requested sanctions. Regarding the March 2023 subpoenas, Morgan's counsel argued that "none of the subpoenaed parties served objections pursuant to Civ.R. 45(C)(2)(b) and that RTA never filed a motion to quash these subpoenas, nor did it provide a legal justification for failing to comply with them." Morgan's counsel stated that after RTA's counsel and the witnesses failed to appear for deposition, he attempted to resolve it amicably — to no avail.

{¶ 16} Morgan's counsel further explained in his motion to compel:

On October 6, 2023, the Court held a telephonic final pretrial which counsel for both parties attended. At the pretrial, the parties agreed that Defendant would take Ms. Morgan's deposition at Defense Counsel's office on October 9, 2023 and Defense Counsel represented to the Court that he would produce Stephen Walker for deposition on October 16, 2023 at Plaintiff's Counsel's office. Ms. Morgan complied with the agreement and appeared for her deposition at Defense Counsel's office on October 9, 2023. Ms. Morgan also issued a second subpoena for Stephen Walker to appear for deposition on October 16, 2023. Despite Defense Counsel's representations to Ms. Morgan's counsel, and the Court, during the pretrial conference neither he nor Stephen Walker appeared for the deposition. Rather, Defense Counsel again moved the goal posts and demanded more concessions from Ms. Morgan while holding hostage Ms. Morgan's ability to depose RTA's witnesses.

{¶ 17} On December 1, 2023, the trial court granted Morgan's motion to compel but held its ruling on sanctions in abeyance. The trial court ordered that all

outstanding depositions be concluded by January 8, 2024. That same day, Morgan's trial counsel emailed RTA's counsel three separate notices to take the depositions of the three witnesses at Morgan's counsel's office in Broadview Heights on December 8, 2023.

{¶ 18} RTA's attorney responded via fax on December 7, 2023, stating that he would be in another deposition on December 8 and was, therefore, unavailable that day. RTA's counsel also asserted that according to Cuyahoga C.P., Gen.Div., Loc.R. 13, Morgan's counsel was supposed to confer with opposing counsel before choosing a deposition date. RTA's counsel further argued that it was "unduly burdensome to expect three [RTA] employees to traverse to the nether-reaches of the County when some of them rely upon public transit to get to work . . . ." RTA's counsel told Morgan's counsel to contact him before Friday, December 15, 2023, "to pick a mutually agreeable date(s) for any remaining depositions" that he wished to conduct.

{¶ 19} The three witnesses failed to appear for the depositions on December 8, 2023. Morgan moved for an order to show cause and for sanctions that same day. The trial court denied the motion but ordered all depositions to be completed by January 8, 2024. The trial court also stated that it agreed with Morgan's argument that the delay in deposing the witnesses imposed an undue burden upon her in replying to RTA's summary judgment motion and extended Morgan's time to respond to January 10, 2024.

{¶ 20} Morgan's counsel sent an email to RTA's counsel on Monday, December 18, 2023, attempting to reschedule the depositions to take place at his office in Broadview Heights on January 8, 2024. Morgan's counsel attached three "amended notices of depositions" for the witnesses and requested RTA's counsel to provide alternate dates if that date did not work. RTA's counsel replied via email, stating that Morgan's counsel could not "notice particular nonparty employees to deposition and there's no court order that any of these three (3) nonparties appear in Broadview [Heights]."

{¶ 21} Morgan filed her brief in opposition to RTA's summary judgment on January 10, 2024. Morgan claims that because RTA's counsel did not produce its employees for deposition, she was forced to respond to RTA's summary judgment motion without taking a single deposition. In its reply, RTA argued that Morgan failed to meet her reciprocal burden of production in her brief in opposition. Specifically, RTA asserted that Morgan failed to support her brief in opposition with any evidence to refute RTA's medical expert's opinion. Morgan subsequently filed a motion for leave to supplement her brief in opposition to include citations to her medical expert's deposition testimony.

{¶ 22} On January 12, 2024, Morgan again moved for an order to show cause and for sanctions, requesting the court to compel RTA and its counsel to appear and show cause why they should not be held in contempt for their defiance of the court's December 1, 2023 order and requesting the court to sanction RTA and its counsel.

{¶ 23} The trial court granted Morgan's motion to show cause and ordered RTA and its counsel to appear before the court and show cause why they should not be held in contempt for failure to obey the court's December 1, 2023 order.

{¶ 24} The trial court held a hearing on Morgan's show-cause motion on January 23, 2024. It found that RTA and its counsel were in violation of the court's December 1st and 15th orders compelling the depositions. The court explained that RTA's counsel's reason for violating the court's order because he disagreed with the location of the depositions was unsupported by Ohio law. The court ordered RTA to pay sanctions in the amount of Morgan's attorney fees and court reporter costs associated with the violation. The court also instructed Morgan's counsel to submit fees and costs to the court.

{¶ 25} The court further ordered that the three depositions "occur immediately" and that RTA would be sanctioned each day the depositions were not completed, which the court said the clock would begin on January 24, 2024.

{¶ 26} RTA appealed the trial court's contempt order, but this court dismissed the appeal for lack of final appealable order because the trial court had not determined the amount of sanctions at the time of the appeal, nor did it specify an opportunity for RTA to purge the sanctions. *Morgan v. Greater Cleveland Regional Transit Auth.*, No. 113582 (8th Dist. Feb. 29, 2024) (motion No. 572445).

{¶ 27} Upon remand, the trial court denied RTA's motion for summary judgment, finding that genuine issues of material fact remained. RTA filed a notice of appeal from this judgment.

{¶ 28} Morgan's counsel filed a memorandum in support of attorney fees and costs. He included a detailed fee invoice as well as an affidavit describing his experience as an attorney.

{¶ 29} RTA and its counsel opposed Morgan's memorandum, arguing that they were not in contempt and there was no basis for sanctions.

{¶ 30} The trial court journalized its previous finding of contempt on April 30, 2024, and ordered that RTA may purge the contempt by paying Morgan's counsel the full amount of $13,870 in reasonable attorney fees and $300 in court reporter costs on or before May 31, 2024. RTA filed a timely notice of appeal from this judgment as well.

## II. Political-Subdivision Immunity

{¶ 31} In its first assignment of error, RTA argues that the trial court erred when it denied its summary judgment motion, denying it the benefit of immunity afforded to city transit authorities under R.C. Ch. 2744.

### A. Summary Judgment Standard

{¶ 32} Civ.R. 56(C) states that summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

{¶ 33} Summary judgment is appropriate where (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of

law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his or her favor. *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 34} We review a trial court's decision on summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

### B. R.C. Chapter 2744

{¶ 35} The Political Subdivision Tort Liability Act under R.C. Ch. 2744 sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability for injury or loss to property. *Colbert v. Cleveland*, 2003-Ohio-3319, ¶ 7, citing *Greene Cty. Agriculture Soc. v. Liming*, 89 Ohio St.3d 551, 556-557 (2000).

{¶ 36} In the first tier of the analysis, the court applies the general rule provided in R.C. 2744.02(A)(1) that a political subdivision is generally "not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." That immunity is not absolute, however. R.C. 2744.02(B); *Cater v. Cleveland*, 83 Ohio St.3d 24, 28 (1998). The second tier of the analysis requires courts to consider whether any of the five exceptions to immunity apply as set forth in R.C. 2744.02(B). *Colbert* at ¶ 9.

{¶ 37} Morgan claims that the immunity exceptions set forth in R.C. 2744.02(B)(1) and (2) apply. R.C. 2744.02(B)(1) provides an exception to immunity when injuries are "caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority." R.C. 2744.02(B)(2) provides an exception to immunity for "the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."

{¶ 38} If an exception applies, then immunity may be reinstated under the third tier of the analysis if the political subdivision can demonstrate the applicability of any of the defenses set forth in R.C. 2744.03. *Colbert*, 2003-Ohio-3319, at ¶ 9. The defenses set forth in R.C. 2744.03, however, are inapplicable in this case.

{¶ 39} There is no question that RTA is a political subdivision pursuant to R.C. 306.31. *Parsons v. Greater Cleveland Regional Transit Auth.*, 2010-Ohio-266, ¶ 7 (8th Dist.), citing *Drexler v. Greater Cleveland Regional Transit Auth.*, 80 Ohio App.3d 367, 370 (8th Dist. 1992). Furthermore, the operation of a city bus line is a proprietary function. R.C. 2744.01(G)(2)(c). Thus, under the first tier of the analysis, this case involves a political subdivision engaged in a proprietary function. Therefore, RTA is immune from liability for Morgan's injury unless one of the exceptions under R.C. 2744.02(B)(1) or (2) applies to expose it to liability under the second tier of the immunity analysis.

### 1. "Operation" of the Bus Under R.C. 2744.02(B)(1)

{¶ 40} The parties do not dispute that the bus driver was acting within the scope of his employment and authority when Morgan was injured. Neither do the parties dispute that a city bus is a "motor vehicle." But RTA argues that a bus driver shutting the bus door on someone's wrist as that person exits the bus does not fall within the meaning of the "negligent operation of a motor vehicle." Specifically, RTA maintains that because the bus driver was not driving or moving the bus when he closed the bus door on Morgan's wrist, the exception under R.C. 2744.02(B)(1) does not apply. We disagree.

{¶ 41} In support of its argument, RTA relies on *Doe v. Marlington Local School Dist. Bd. Of Edn.*, 2009-Ohio-1360. In *Doe*, a student had been sexually molested by another student while on the school bus. The student's guardians sued the school district, arguing that the exception to immunity in R.C. 2744.02(B)(1) applied. They argued "that in the context of a school bus, 'operation of any motor vehicle' means all of the essential functions that the bus driver is trained or required to do by law." *Id*. at ¶ 9.

{¶ 42} The Ohio Supreme Court explained in *Doe* that resolution of the issue depended on the meaning of "'operation of'" within R.C. 2744.02(B)(1). *Id*. at ¶ 17, quoting R.C. 2744.02(B)(1). The Court noted that the dictionary definition "suggests that 'operation,' when used in reference to a motor vehicle, pertains to controlling or directing the functioning of the motor vehicle itself." *Id*. at ¶ 20. The Court also looked to the definition of "operate" in R.C. 4511.01, which it said "means

'to cause or have caused movement of a vehicle, streetcar, or trackless trolley.'" *Id*. at ¶ 23, citing R.C. 4511.01(HHH). The Court found the definition of "operate" in R.C. 4511.01(HHH) to be "useful in gleaning the meaning of 'operation' in R.C. 2744.01(B)(1)." *Id*. at ¶ 24. Relying on the definition of "operate" in R.C. 4511.01(HHH) as well as the plain and ordinary meaning of the word, the Court determined that "the exception to immunity in R.C. 2744.02(B)(1) for the negligent operation of a motor vehicle pertains only to negligence in driving or otherwise causing the vehicle to be moved." *Id*. at ¶ 26. It then held that the school district was entitled to immunity under R.C. 2744.02(B)(1) because "'negligent operation of any motor vehicle' does not encompass supervision of the conduct of the passengers in the vehicle." *Id*. at the syllabus, quoting R.C. 2744.02(B)(1).

{¶ 43} We find *Doe* to be distinguishable from the present case. *Doe* involved a negligent supervision claim against a school district. While we agree that negligently supervising passengers on a bus would not fall within the exception to immunity under R.C. 2744.02(B)(1), we find that closing the bus doors falls within the plain and ordinary meaning of "operating" the bus. Indeed, operating the bus doors is a normal and necessary function of driving the bus.

{¶ 44} RTA also argues that *Dub v. Beachwood*, 2010-Ohio-5135 (8th Dist.), is "instructive and on point" because it involved a passenger injured while exiting a city van and this court relied on *Doe*, 2009-Ohio-1360, when determining that "the evidence demonstrate[d] that the van driver was not driving or otherwise causing the vehicle to be moved" when the passenger was injured. In *Dub*, the plaintiff fell

while exiting a city van provided for senior citizens' use within the city. The plaintiff sued the city, arguing that the van driver failed to assist her as she exited the van. This court held that the exception in R.C. 2744.02(B)(1) did not apply and, therefore, the city was entitled to immunity for several reasons, including the fact that it was clear from "[t]he literature given to the passengers" when they sign up for the service that they "must provide an escort if they are in need of personal assistance." *Id.* at ¶ 27. We concluded that the van drivers did not have a duty to assist passengers exiting the bus. *Id.* Additionally, the passenger stated that she fell on the ice as she exited the van. We explained that to prevail in a slip-and-fall negligence claim, the passenger had to present evidence that "the defendant was actively negligent in permitting and/or creating the unnatural accumulation." *Id.*, citing *Lawrence v. Jiffy Print, Inc.*, 2005-Ohio-4043, ¶ 27 (11th Dist.). We therefore disagree with RTA that *Dub* is instructive here.

{¶ 45} What is clear from *Doe* and *Dub* is that the operation of a city bus or van does not include supervising or assisting passengers. What it does include is operating the bus doors; i.e., operating the bus doors falls within the meaning of the normal "operation of any motor vehicle" in R.C. 2744.02(B)(1). And if a plaintiff establishes that a bus driver was negligent in operating the bus doors, then the exception to immunity set forth in R.C. 2744.02(B)(1) applies. Therefore, RTA is not entitled to immunity as a matter of law with respect to this exception.

{¶ 46} Accordingly, we find no merit to RTA's arguments regarding R.C. 2744.02(B)(1).

## 2. Negligence Under R.C. 2744.02(B)(2)

{¶ 47} RTA further argues that Morgan "failed to establish that her alleged injury was proximately caused by the alleged incident." Specifically, RTA argues that Morgan failed to present acceptable Civ.R. 56(C) evidence of expert medical testimony regarding causation in her response to RTA's motion for summary judgment. Again, we disagree.

{¶ 48} Under Civ.R. 56(C), the movant has the initial burden to show there is no genuine issue of material fact. *Byrd v. Smith*, 2006-Ohio-3455, ¶ 10, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 294 (1996). The nonmoving party then has a reciprocal burden. *Id.* The nonmovant's response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing there is a genuine issue for trial and may not rest upon mere allegations or denials in the pleadings. Civ.R. 56(E).

{¶ 49} "Generally, the issue of proximate cause is a question of fact and is not resolvable by means of summary judgment." *Lesco v. Heaton*, 2010-Ohio-3880, ¶ 37 (8th Dist.), citing *Creech v. Brock & Assocs. Constr.*, 2009-Ohio-3930, ¶ 14 (12th Dist.); *see also Strother v. Hutchinson*, 67 Ohio St.2d 282, 288 (1981), citing *Clinger v. Duncan*, 166 Ohio St. 216, 223 (1957) ("Ordinarily, proximate cause is a question of fact for the jury.").

{¶ 50} "Summary judgment proceedings prohibit the trial court from weighing the evidence and limit the trial court to construing the evidence in the light most favorable to the nonmoving party." *Pearson v. Alpha Phi Homes, Inc.*,

2019-Ohio-960, ¶ 9 (9th Dist.), citing *Nationstar Mtge., LLC v. Waisanen*, 2017-Ohio-131, ¶ 8 (9th Dist.). "In a summary judgment review, the court may not weigh the proof or choose among reasonable inferences, and the court is limited to examining the evidence in the light most favorable to the non-moving party." *Coterel v. Reed*, 2016-Ohio-7411, ¶ 12 (2d Dist.), citing *Dupler v. Mansfield Journal Co., Inc.*, 64 Ohio St.2d 116, 121 (1980). "[B]ecause summary judgment is a procedural device to terminate litigation, it must be awarded with caution. Doubts must be resolved in favor of the non-moving party." *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359 (1992), citing *Osborne v. Lyles*, 63 Ohio St.3d 326, 333 (1992).

{¶ 51} In a negligence action, the plaintiff must prove that (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, and (3) the plaintiff's injury was proximately caused by the defendant's breach. *Strother* at 287. For purposes of summary judgment, RTA conceded the elements of duty and breach of duty. Thus, proximate cause is the only element at issue in this appeal.

{¶ 52} RTA supported its motion for summary judgment with an affidavit from its medical expert, Dr. Douglas Gula, as well as Dr. Gula's curriculum vitae and expert report. Dr. Gula opined that Morgan did not suffer an injury when the driver closed the door on her wrist. Dr. Gula explained that Morgan's wrist pain is due to her extensive medical history and "multitude of morbidities."

{¶ 53} In her brief in opposition, Morgan asserted that her medical expert, Dr. Dawn Zacharias, opined in her report that Morgan's injuries were a direct and proximate result of the September 20, 2020 incident when the bus driver closed the

bus door on Ms. Morgan's left wrist. However, Morgan did not attach her expert report to her brief in opposition with an affidavit verifying its authenticity. But Morgan subsequently moved the trial court for leave to supplement her brief in opposition with her expert's sworn deposition testimony, citing to pages in the deposition where her expert opined that the RTA bus door closing on Morgan's wrist on September 20, 2020, proximately caused Morgan's injuries.

{¶ 54} RTA argues that the trial court never ruled on Morgan's motion to supplement her brief in opposition with her expert's deposition testimony. RTA maintains that we must therefore presume that the trial court denied Morgan's motion because of the well-established rule that all motions not ruled upon by the trial court are presumed denied. *See State v. Duncan*, 2012-Ohio-3683, ¶ 4 (8th Dist.) (motions not ruled on when a trial court enters final judgment are considered denied). We disagree. This rule applies when the trial court has not ruled on the motion by the time it enters final judgment in the case. Because this is an interlocutory appeal, the rule is inapplicable here.

{¶ 55} In support of its argument, RTA also cites *Ogolo v. Greater Cleveland Regional Transit Auth.*, 2013-Ohio-4921, ¶ 8-16 (8th Dist.). In *Ogolo*, the plaintiff sustained a head injury on an RTA bus when the bus struck a cement barrier in the road. The plaintiff subsequently sued RTA. At issue on appeal was whether expert testimony was necessary to establish proximate cause. This court held that it was because "few injuries could be more 'internal and elusive' than a closed head injury unaccompanied by any observable, external signs of trauma." *Id.* at ¶ 14. But we

also noted that in some cases, "the causal nexus between an accident and the alleged injury is so clear as to obviate the need for expert testimony in a personal injury claim." *Id.*

{¶ 56} In this case, Morgan's medical expert opined that the bus door closing on Morgan's wrist caused Morgan's injuries.[2] RTA's expert opined the opposite. This creates a question of fact. Moreover, Morgan is fully capable of testifying that when the bus doors closed on her wrist, she was injured and experienced pain. *See id.* The extent of that pain is for the trier of fact. Viewing the evidence in a light most favorable to Morgan, as we are required to do, we agree with the trial court that questions of fact remain in this case.

{¶ 57} RTA also argues that because it submitted a video that it claims proved Morgan was not injured when the bus door closed on her hand, no genuine issues of fact remain. The video that RTA is referring to is a video of an RTA employee voluntarily placing his wrists between the bus doors and closing the doors on his wrists. Supposedly, the employee did not experience pain when the doors closed on his wrist, which RTA claims is because the doors have four-inch rubber gaskets "protecting the door opening." In support of this argument, RTA cites to *Scott v. Harris*, 550 U.S. 372 (2007), where the United States Supreme Court held

---

[2] RTA argues that Morgan's expert fails to create a genuine issue of material fact because she is an allergist that only reviewed Morgan's medical records and testified that she does not want to be an expert or testify in this case but admitted she would appear if subpoenaed. Morgan's expert also admitted that RTA's expert may have a more thorough opinion of Morgan's injuries than she did. However, in determining a motion for summary judgment, a court may not weigh or assess the credibility of one expert over another. *Johnson v. Pohlman*, 2005-Ohio-3554, ¶ 37 (8th Dist.).

that summary judgment was proper when a video in the case blatantly contradicted the plaintiff's version of events. *Id.* at 380. The video in this case, however, does not blatantly contradict Morgan's version of events. Just because one person is not injured when the bus doors close on his or her wrist does not mean that someone else cannot be injured under the same or similar circumstances.

{¶ 58} RTA submitted another video of Morgan exiting the bus. RTA contends that the video shows Morgan did not cry out or scream when the doors closed on her wrist and, thus, it shows she did not suffer an injury. We also disagree that this video proves that Morgan did not suffer an injury. Not everyone cries out in pain when they suffer an injury.

{¶ 59} RTA further argues that respondeat superior is not an exception to immunity. However, this court has explained that "'[a] political subdivision may not be held liable under a theory of respondeat superior unless one of the exceptions to the sovereign immunity listed in R.C. 2744.02(B) applies.'" *McKee v. McCann*, 2017-Ohio-7181, ¶ 48 (8th Dist.), quoting *Reno v. Centerville*, 2004-Ohio-781, ¶ 53 (2d Dist.). Because we have determined that a question of fact remains with respect to whether the exception set forth in R.C. 2744.02(B)(2) applies, RTA's argument has no merit.

{¶ 60} After review, we find no merit to RTA's arguments that the exceptions in R.C. 2744.02(B)(1) and (2) are inapplicable in this case. We conclude that genuine questions of material fact remain regarding both subsections. Therefore, we overrule RTA's first assignment of error.

## III. Discovery Violations and Contempt Proceedings

{¶ 61} In its second assignment of error, RTA argues that the trial court erred when it found RTA and its counsel in contempt of court for violating the trial court's December 1, 2023 judgment granting Morgan's motion to compel and ordering that all depositions be completed by January 8, 2024, and its December 15, 2023 judgment reinforcing its former order that all depositions be completed by January 8, 2024. We note that the only depositions that had not yet been taken were those of RTA's three employees in which it had identified through discovery as possible witnesses who had discoverable information. Notably, one of these employees was the bus driver who closed the bus door on Morgan's wrist as she exited the RTA bus.

### A. Standard of Review

{¶ 62} It is well established that a trial court enjoys broad discretion in the regulation of discovery proceedings. *Berger v. Lu-Jean Feng*, 2012-Ohio-1041, ¶ 56 (8th Dist.), citing *Hogan v. Hogan*, 2003-Ohio-4747, ¶ 15 (12th Dist.). Indeed, "[t]he discovery rules give the trial court great latitude in crafting sanctions to fit discovery abuses." *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256 (1999). We therefore review a trial court's judgment regarding discovery matters for abuse of discretion. *State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467, 469 (1998).

{¶ 63} Contempt powers are considered inherent in the court and are considered necessary to the proper exercise of judicial functions. *Denovchek*, 36 Ohio St.3d at 15. Because the primary purpose of contempt proceedings is to

preserve the authority and proper functioning of the court, we also review the trial court's decisions in contempt proceedings for an abuse of discretion. *Id*. at 16.

{¶ 64} In applying the abuse-of-discretion standard of review, we cannot replace the trial court's judgment with our own. *Lahoud v. Tri-Monex, Inc.*, 2011-Ohio-4120, ¶ 38 (8th Dist.), citing *In re Jane Doe 1*, 57 Ohio St.3d 135, 137-138 (1991). An abuse of discretion occurs when the trial court's decision is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). It is axiomatic, however, that a trial "court does not have discretion to misapply the law." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 38. Thus, an abuse of discretion also occurs when a court "'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'" *Thomas v. Cleveland*, 2008-Ohio-1720, ¶ 15 (8th Dist.), quoting *Berger v. Mayfield*, 265 F.3d 399 (6th Cir. 2001).

### B. Civil Contempt

{¶ 65} Contempt of court has been defined as the "disobedience of an order of a court, conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *In re Contempt of Morris*, 110 Ohio App.3d 475, 479 (8th Dist. 1996), citing *Denovchek* at 15. "The purpose of contempt proceedings is to secure the dignity of the courts and the uninterrupted and unimpeded administration of justice." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55 (1971), paragraph two of the syllabus. A court has both inherent and statutory authority to punish contempt.

*Howell v. Howell*, 2005-Ohio-2798, ¶ 19 (10th Dist.), quoting *In re Contempt of Morris* at 479.

{¶ 66} This case involves indirect, civil contempt. It is indirect contempt because it involves conduct that occurred outside of the presence of the court. *In re J.M.*, 2008-Ohio-6763, ¶ 46 (12th Dist.). It is civil contempt because the character and purpose of the punishment is to compensate for losses or damages sustained by reason of noncompliance with the court's order. *Pugh v. Pugh*, 15 Ohio St.3d 136, 140 (1984).

{¶ 67} Sanctions for noncompliance in civil contempt proceedings may include "fines designed to compensate the other party for the losses incurred as a result of the contemnor's refusal to comply." *M.A.B. v. B.R.L.*, 2024-Ohio-573, ¶ 27 (8th Dist.), quoting *Williams v. Cordle*, 1996 Ohio App. LEXIS 388, *13 (10th Dist. Feb. 8, 1996). And although a prison sentence may be imposed in cases of civil contempt, the contemnor must be afforded the opportunity to purge the contempt. *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253 (1980). "Once the contemnor purges his contempt, any sanctions will be discontinued because compliance has been achieved." *U.S. Bank Natl. Assn. v. Golf Course Mgt., Inc.*, 2009-Ohio-2807, ¶ 16 (12th Dist.). Accordingly, the contemnor is said to "carry the keys to his prison in his own pocket." *Brown* at 253.

{¶ 68} To establish civil contempt, the complainant must establish by clear and convincing evidence (1) the existence of a valid court order, (2) the respondent had knowledge of the order, and (3) the respondent violated the order. *In re K.B.*,

2012-Ohio-5507, ¶ 77 (8th Dist.). Once the prima facie case of contempt has been established by clear and convincing evidence, the burden shifts to the nonmoving party to either rebut the initial showing of contempt or establish an affirmative defense by a preponderance of the evidence. *K.M.M. v. A.J.T.*, 2021-Ohio-2452, ¶ 24 (8th Dist.), citing *Allen v. Allen*, 2003-Ohio-954, ¶ 16 (10th Dist.).

{¶ 69} The burden of proof for civil contempt is clear and convincing evidence. *Flowers v. Flowers* 2011-Ohio-5972, ¶ 9 (11th Dist.). "Clear and convincing evidence is that measure or degree of proof . . . which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

## C. Civ.R. 45

{¶ 70} RTA first argues that Morgan did not properly serve the RTA employees with subpoenas pursuant to Civ.R. 45. Specifically, RTA contends that because Morgan did not personally serve its employees in March 2023, Morgan "violate[d] the plain language of Civil Rule 45(B)." RTA maintains that without valid subpoenas, the trial court lacked the authority to compel the RTA employees' depositions. We disagree that Morgan did not validly serve the RTA employees with subpoenas.

{¶ 71} Civ.R. 45(B) states in pertinent part:

Service of a subpoena upon a person named therein shall be made by delivering a copy of the subpoena to the person, by reading it to him or her in person, by leaving it at the person's usual place of residence, or

by placing a sealed envelope containing the subpoena in the United States mail as certified or express mail return receipt requested with instructions to the delivering postal authority to show to whom delivered, date of delivery and address where delivered, and by tendering to the person upon demand the fees for one day's attendance and the mileage allowed by law. The person responsible for serving the subpoena shall file a return of the subpoena with the clerk.

{¶ 72} In March 2023, Morgan sent the subpoenas to the RTA employees by certified mail to the address that RTA had given Morgan when it identified them as witnesses with possible discoverable information, which was their place of employment at RTA's headquarters in downtown Cleveland. A legal assistant for RTA signed for the subpoenas. Morgan filed the returns of service for the subpoenas with the clerk of courts. The Ohio Supreme Court has held, "Where a subpoena is left at the business location or place of employment of a witness and where that witness has actual knowledge of the subpoena, a valid service of summons has been completed." *Denovchek*, 36 Ohio St.3d at 15. Because a legal assistant at RTA signed for the subpoenas, and nothing in the record indicates otherwise, we can safely presume that the RTA employees had actual knowledge of the subpoenas. Thus, Morgan properly served the RTA employees with subpoenas.

{¶ 73} However, we agree with RTA that the trial court could not find RTA in contempt of court or sanction it for not producing its employees for the depositions when the RTA employees were not parties to the case.

{¶ 74} According to the Ohio Rules of Civil Procedure, "[t]he attendance of a party deponent may be compelled by the use of notice of examination[,]" but "[t]he attendance of a witness deponent may be compelled by the use of subpoena as

provided by Civ.R. 45." Civ.R. 30(A). The Ohio Supreme Court has explained that "Civ.R. 30(A) provides that the attendance of a nonparty witness deponent *should* be compelled by the use of subpoena as provided by Civ.R. 45." (Emphasis added.) *State ex rel. The V Cos.*, 81 Ohio St.3d at 469.

{¶ 75} Civ.R. 45 also sets forth what courts may do when a person validly served with a subpoena fails to appear for a deposition. Civ.R. 45(E) provides that "[f]ailure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued." This rule also gives courts the power to issue sanctions to persons validly served with a subpoena if they fail to appear for a deposition. It states, "A subpoenaed person or that person's attorney who frivolously resists discovery under this rule may be required by the court to pay the reasonable expenses, including reasonable attorney's fees, of the party seeking the discovery." *Id.*

{¶ 76} We note that RTA's counsel did not file a notice of appearance or represent RTA's three employees as counsel. Rather, RTA's counsel has consistently argued that the RTA employees are nonparty witnesses that must be personally served with a subpoena and RTA's counsel cannot be held in contempt for failing to produce the RTA employees for deposition. And while Morgan subpoenaed RTA's three employees in March 2023, Morgan did not move to compel the three RTA employees to attend the depositions or seek sanctions from the RTA employees. Instead, Morgan moved to compel RTA to produce the RTA employees for deposition.

{¶ 77} In *Grady v. Charles Kalinsky, D.D.S.*, 2005-Ohio-5550 (8th Dist.), Grady filed a malpractice complaint against his dentist. The dentist's counsel requested that Grady (unrepresented by counsel at that point) provide dates for Grady's expert's deposition. Grady did not respond to the request. The dentist's counsel sent a second request, which Grady also ignored. Eventually, the dentist moved to exclude Grady's expert as a witness due to Grady's "dilatory conduct in refusing to produce [the expert] for deposition and his attempts to prevent the deposition." *Id*. at ¶ 9. The trial court granted the dentist's motion. *Id*. After the trial court subsequently granted the dentist summary judgment, Grady appealed. *Id*. at ¶ 11.

{¶ 78} On appeal, this court reversed the trial court's decision excluding Grady's expert and granting summary judgment to the dentist. *Id*. at ¶ 2. We stated that while "[t]he rules of discovery afford the trial court great latitude in crafting sanctions to fit discovery abuses," Grady's "resistance did not violate a court order or any discovery rule." *Id*. at ¶ 15. We further explained, "There is no rule requiring a party to produce an expert witness for deposition, nor is there any rule under which a party may be sanctioned for failing to produce a non-party witness for deposition." *Id*.

{¶ 79} Similarly, in *Lowe v. Univ. Hosps. of Cleveland*, 2002-Ohio-4084 (8th Dist.), the trial court sanctioned the plaintiff by excluding his expert witness after the plaintiff failed to make the expert available for deposition. *Id*. at ¶ 14. The plaintiff argued on appeal that the trial court erred when it ordered him to produce

his expert witness for deposition and sanctioning him for failing to do so. This court agreed.

{¶ 80} We explained in *Lowe* that the defendants did not subpoena the expert or seek an order finding him in contempt. *Id.* at ¶ 22. We pointed out that "[a] deposition of a non-party witness can be taken with the aid of a subpoena to compel the witness's attendance" and "[f]ailure to obey the subpoena may be deemed a contempt of the issuing court by the person subpoenaed." *Id.*, citing Civ.R. 30 and 45. We explained that the defendants "never filed a motion to compel [plaintiffs] to provide Dr. Payne for deposition, *with good reason*: There is no rule requiring a party to produce an expert witness for deposition, nor is there any rule under which a party may be sanctioned for failing to produce a non-party witness for deposition." (Emphasis added.) *Id.* at ¶ 23, citing *State ex rel. The V Cos.*, 81 Ohio St.3d at 469-470, and *Randle v. Gordon*, 1987 Ohio App. LEXIS 9432 (Oct. 29, 1997 8th Dist.).

{¶ 81} We further noted in *Lowe* that it was "arbitrary and unreasonable to require a party to provide a non-party witness for deposition because the party has no control over another person" and that "[w]hile professional courtesy and a mutual desire to accommodate busy experts might make it reasonable for parties to schedule expert depositions by agreement, the only means to compel an expert deposition is by subpoena." *Id.* at ¶ 23, 25.

{¶ 82} In *Tiburzi v. Adience, Inc.*, 2012-Ohio-803 (8th Dist.), this court reversed the trial court after it excluded the plaintiff's expert report after the expert

failed to appear for his deposition. *Id*. at ¶ 23. We explained that if "'a non-party witness fails to obey a subpoena and attend his deposition, Civ.R. 45(E) provides that a court may find the non-party witness in contempt of court, and additionally authorizes the court to order the non-party witness . . . to pay the deposing party's reasonable costs and attorney's fees incurred.'" *Id*. at ¶ 20, quoting *Ohio Civ. Rights Comm. v. Burch*, 2005-Ohio-259, ¶ 16. We further explained that although the defendant subpoenaed the plaintiff's expert to appear for a deposition, the defendant never moved to compel the expert's appearance to be deposed. *Id*. at ¶ 23.

{¶ 83} In a more recent case, this court applied these same principles to affirm the trial court's judgment "denying a motion to compel the noticed deposition of a nonparty." *Koeblitz v. Koeblitz*, 2021-Ohio-2269, ¶ 30 (8th Dist.). The plaintiff in *Koeblitz* "attempted to notice" the deposition of a nonparty receiver appointed to the case. When the witness failed to appear, the plaintiff moved to compel. This court explained:

> [U]nder Civ.R. 30(A), a nonparty witness may only be compelled to sit for a deposition or otherwise provide discovery materials by the use of a subpoena as provided by Civ.R. 45, as contrasted with the attendance of a party to the proceeding who may be compelled to sit for deposition by the use of a notice of examination under Civ.R. 30(B). [*State ex rel. The V Cos.*, 81 Ohio St.3d at 469] citing Civ.R. 30(A). A court may properly exercise its discretion to deny a motion to compel discovery that is not made in accordance with the Ohio Civil Rules. *Id*.; *see also Yidi, L.L.C. v. JHB Hotel, L.L.C.*, 2016-Ohio-6955, 70 N.E.3d 1231, ¶ 10 (8th Dist.) (trial court cannot compel discovery from a nonparty when no subpoena under Civ.R. 45 has been issued).

*Id*. at ¶ 28.

**{¶ 84}** Here, Morgan moved to compel RTA to produce its three employees — nonparties to the case — for deposition, which the trial court granted. However, under the Rules of Civil Procedure, RTA did not have to produce its employees for deposition. While we certainly understand the trial court's frustration in this case and note that professional courtesy and a mutual desire to accommodate busy schedules to efficiently complete discovery might make it reasonable for an employer to coordinate depositions or provide representation for subpoenaed employees acting in the course and scope of employment, the trial court lacked authority to find RTA or its counsel in contempt for not producing its employees, who were nonparty witnesses to this case. [3]

**{¶ 85}** What Morgan should have done when RTA's employees failed to show for their depositions in April 2023, is move the court to compel their attendance at the depositions or for an order to show cause and explain why they should not be held in contempt of court. Civ.R. 45(E); *Tiburzi*, 2012-Ohio-803, at ¶ 20. According to R.C. 1907.18(A)(3), county court judges have jurisdiction and authority to "[i]ssue subpoenas to compel the attendance of witnesses to give evidence in causes or matters pending before the judges, or for the purpose of taking depositions or perpetuating testimony[.]" A court obtains jurisdiction over a witness through a subpoena. *State v. Eatmon*, 2022-Ohio-1197, ¶ 24. "The trial court holds continuing

---

[3] The record at this stage of the proceedings does not appear to reflect that RTA's counsel interfered or instructed the RTA employees to ignore a validly served subpoena or otherwise interfered with discovery. Thus, based upon the record, the trial court's order for sanctions against RTA's counsel for failing to produce RTA employees for deposition is unsupported by the record.

jurisdiction over a witness who has been served with a subpoena." *State v. Preston*, 1979 Ohio App. LEXIS 9616 (6th Dist. Jun. 8, 1979). Thus, the trial court retains jurisdiction over RTA's three employees via the validly served subpoenas that Morgan sent to the witnesses in March 2023.

{¶ 86} Accordingly, we conclude that the trial court misapplied the law and, thus, abused its discretion when it found RTA and its counsel in contempt and ordered them to pay Morgan's reasonable attorney fees and costs. RTA's second assignment of error is sustained.

{¶ 87} RTA argues in its third assignment of error the trial court should have held an evidentiary hearing to determine the reasonableness of the attorney fees. Because we are reversing the trial court's judgment finding RTA and its counsel in contempt, this assignment of error is now moot.

{¶ 88} Judgment affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

EILEEN A. GALLAGHER, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR